UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NIKEE N.,<br><br>                    Plaintiff,<br><br>     v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | NO:  4:18-CV-5136-TOR<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 13, 14.  The Court has reviewed the administrative record

and the parties' completed briefing, and is fully informed.  For the reasons

discussed below, the Court **DENIES** Plaintiff's motion and **GRANTS** Defendant's

motion.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g),

1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158-59 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)). "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted).

The party appealing the ALJ's decision generally bears the burden of establishing

that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within

the meaning of the Social Security Act. First, the claimant must be "unable to

engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that he is not only unable to do his previous work[,] but cannot,

considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R.

§ 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's

work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in

"substantial gainful activity," the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity ("RFC"), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past ("past relevant work"). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work, and (2) such work "exists in significant numbers

in the national economy." 20 C.F.R. § 416.960(c)(2); *see Tackett*, 180 F.3d at 1098-99.

**ALJ'S FINDINGS**

Plaintiff applied for supplemental security income disability benefits on November 12, 2013, alleging an onset date of January 1, 2009. Tr. 15. Plaintiff's application was denied initially and upon reconsideration. *Id.* On March 2, 2016, Plaintiff appeared at a video hearing before an Administrative Law Judge (ALJ). *Id.* There were supplemental hearings held on July 21, 2016 and November 21, 2016. *Id.* During the July 2016 hearing, Plaintiff amended the alleged onset date to November 29, 2012. *Id.* at 15, 50-51. The ALJ rendered a decision denying Plaintiff benefits on December 29, 2016. *Id.* at 15-26.

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 12, 2013, the application date. *Id.* at 17. At step two, the ALJ found that Plaintiff had the following severe impairments: ankylosing spondylitis; fibromyalgia; trochanteric bursitis of left hip; learning disability; attention deficit hyperactivity disorder (ADHD); depression and anxiety. *Id.* At step three, the ALJ found that Plaintiff's severe impairments did not meet or medically equal a listed impairment. *Id.* at 17-19. The ALJ then determined that Plaintiff had the RFC

to perform sedentary work as defined in 20 CFR 416.967(a) except she can never climb ladders, ropes or scaffolds, work at unprotected heights or in proximity to hazards. She can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. She can occasionally reach overhead with the right upper extremity. In order to meet ordinary and reasonable employer expectations regarding attendance, production and work place behavior, the claimant can understand, remember and carry out unskilled, routine and repetitive work that can be learned by demonstration and in which tasks to be performed are predetermined by the employer. She can cope with occasional work setting change and occasional interaction with supervisors. She can work in proximity to coworkers but not in a team or cooperative effort. She can perform work that does not require interaction with the general public as an essential element of the job but occasional incidental contact with the general public is not precluded.

*Id*. at 19-21. At step four, the ALJ found that Plaintiff had no relevant past work experience. *Id*. at 24. At step five, after considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff was capable of performing in representative occupations, such as assembler, escort vehicle driver, and document preparer, which exist in significant numbers in the national economy. *Id*. at 25. On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act. *Id*.

On June 7, 2016, the Appeals Council declined Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *Id*. at 1; 42 U.S.C. §§ 405(g), 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

*//*

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income disability benefits under Title XVI of the Social Security Act. Plaintiff raises four issues for review:

    (1) Whether the ALJ properly weighed the opinions of Plaintiff's medical providers;

    (2) Whether the ALJ properly evaluated Plaintiff's subjective complaints;

    (3) Whether the ALJ properly evaluated Plaintiff's mental impairments at step-three; and

    (4) Whether the ALJ properly evaluated Plaintiff's capability to perform work in the national economy at step-five.

ECF No. 13 at 10. The Court evaluates each issue in turn.

## DISCUSSION

### A. Opinions of Medical Providers

First, Plaintiff faults the ALJ for improperly discounting the opinions of her treating physician, Dr. Meneleo Liligan, and the opinions of examining physician Thomas Genthe, Ph.D. ECF Nos. 13 at 12-15; 15 at 1-6. The ALJ did not reject either opinion entirely, but instead gave "little weight" to Dr. Liligan's opinion and failed to directly discuss Dr. Genthe's opinions in her decision. Tr. 28-29.

In analyzing an ALJ's weighing of medical evidence, a reviewing court distinguishes between the opinions of three types of physicians: "(1) those who

treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan*, 246 F.3d at 1201-02 (citations omitted). Generally, the opinion of a treating physician carries more weight than the opinion of an examining physician, and the opinion of an examining physician carries more weight than the opinion of a reviewing physician. *Id.* In addition, the Commissioner's regulations give more weight to opinions that are explained than to opinions that are not, and to the opinions of specialists on matters relating to their area of expertise over the opinions of non-specialists. *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). If, however, "a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id*. Regardless of the source, an ALJ need not accept a physician's opinion that is "brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin*., 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

"Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs." *Garrison*, 759 F.3d at 1012. "In other words, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13. That said, the ALJ is not required to recite any magic words to properly reject a medical opinion. *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (stating that the Court may draw reasonable inferences when appropriate). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725).

## 1. Dr. Lilagan

On July 5, 2016, Dr. Liligan completed a "Medical Report" at the request of Plaintiff's Counsel, in which he was prompted to answer several questions "concern[ing] your patient's application for Social Security Disability." Tr. 1035. In the Medical Report, Dr. Liligan opined that work on a continuous basis would aggravate Plaintiff's hip and back pain, Plaintiff was limited to sedentary work, and Plaintiff would be absent from work four or more days per month due to her

medical impairments. *Id*. at 1035-36. Dr. Liligan did not elaborate or provide any reasoning for these limitations.

The ALJ assigned great weight to Dr. Liligan's opinion that Plaintiff was limited to sedentary work but assigned little weight to his opinion that Plaintiff would be absent from work more than four days per month. *Id*. at 23. The latter opinion is inconsistent with the opinions of Dr. Dale Donahue and Dr. Dale Thuline, whom agreed Plaintiff was limited to sedentary work but found her capable of sustaining a 40-hour workweek. *Id*. at 116-18, 131-33. As a contradicted opinion, the Court must determine whether the ALJ provided specific and legitimate reasons supported by substantial evidence in assigning the opinion little weight.

The ALJ provided two primary reasons for assigning little weight to Dr. Liligan's opinion that Plaintiff would be absent from work four or more days per month due to her impairments: (1) Dr. Liligan failed to provide an explanation for this limitation, and (2) the available evidence did not to support Dr. Liligan's assessment, including Plaintiff's ability to attend her frequent medical appointments without difficulty. *Id*. at 23-24 ("Although her treating provider opined she would be absent from work more than four days per month due to her impairments, he failed to provide an explanation for his opinion and the available evidence fails to support this assessment."). Plaintiff contends these were not valid

reasons for rejecting a treating provider's opinions because (1) the regulations do

not allow for a treating source to be rejected simply because the doctor did not

fully explain how he reached his conclusions, (2) deference is owed the treating

provider even when the record does not wholly support his assessments, and (3)

the ALJ's mischaracterized Plaintiff's difficulty attending her appointments.  ECF

No. 13 at 13-14.  For reasons discussed below, the Court finds that the ALJ did in

fact provide specific and legitimate reasons for giving this particular opinion "little

weight."  Tr. 23.

First, it is the ALJ's duty to resolve conflicting medical opinions.  *Thomas v.*

*Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002).  Significantly, when evaluating

conflicting medical opinions, an ALJ need not accept a medical opinion that is

inadequately supported by the record as a whole or by objective medical findings.

*Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004)

("[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief,

and unsupported by the record as a whole . . . or by objective medical findings.").

Here, the ALJ limited the weight of Dr. Liligan's opinion regarding the severity of

Plaintiff's impairments—specifically, her likely absence from work four or more

days per month—as the opinion was unsupported by objective medical findings.

Tr. 1036.  As the ALJ observed, though Dr. Liligan opined Plaintiff would be

absent from work more than four days per month due to joint pain and stiffness,

Plaintiff's medical records presented "little evidence of active inflammation or obvious joint swelling," "no evidence of decreased strength," and confirmed that Plaintiff "was able to clasp objects and fully close her hand." Tr. 24. The ALJ's resolution of the conflicting opinions is reasonable and must be upheld. *See Batson*, 359 F.3d at 1193 ("[T]he Commissioner's finding are upheld if supported by inferences reasonably drawn from the record . . . and if evidence exists to support more than one rationale interpretation, we must defer to the Commissioner's decision.").

Second, the ALJ properly credited little weight to Dr. Liligan's opinion because he did not adequately explain how he reached his conclusion that Plaintiff's hip pain and ankylosing spondylitis would cause Plaintiff to be absent from work more than four days per month. *Id*. at 23. The "Medical Report" completed by Dr. Liligan contained a series of questions with check boxes next to them and space provided for a brief written explanation if necessary. *See id*. at 1035-37. Question 11 asked Dr. Liligan if it is "more probable than not that your patient would miss some work due to medical impairments," after which Dr. Liligan checked the "yes" box. *Id*. at 1036. Next, when asked how many days his client would miss on the average per month, Dr. Liligan checked the box next to "4 or more days per month." *Id*. When asked to "[p]lease explain," Dr. Liligan did not provide any further explanation. *Id*.

The ALJ gave this opinion "little weight" because Dr. Liligan provided no explanation as to how he reached the conclusion that Plaintiff would miss four or more days of work per month. Plaintiff argues that this is not a specific and legitimate reason to reject Dr. Liligan's opinion. ECF No. 13 at 13-14. However, as discussed, when evaluating conflicting medical opinions, an ALJ need not accept a medical opinion if that opinion is brief, conclusory, and inadequately supported by clinical findings. *See Bayliss*, 427 F.3d at 1216; *Batson*, 359 F.3d at 1195; *Morgan*, 169 F.3d at 601-02. Because Dr. Liligan's opinion was conclusory, brief, and unsupported by clinical evidence, the ALJ's resolution of the conflicting opinions is reasonable.

Finally, the ALJ did not err by citing Plaintiff's daily activities, particularly Plaintiff's ability to attend frequent medical appointments, as an additional reason for discrediting Dr. Liligan's opinion. In resolving conflicting medical opinions, an ALJ may also discount a doctor's opinion when it is inconsistent with a claimant's activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (ALJ may discount physician's opinion regarding severity of limitations when inconsistent with claimant's activities of daily living). While the Court agrees with Plaintiff that her ability to attend medical appointments does not directly equate to her ability to show up for full-time work, the comparison is not necessarily invalid, as Plaintiff contends. ECF No. 13 at 14. Plaintiff's activities

of daily living, which includes her ability "to attend scheduled visits with her primary care provider and rheumatologist without evidence of any rescheduling," reasonably suggests that Dr. Liligan's opinion that Plaintiff would be absent from work more than four days per month is "not fully consistent with her treatment notes." Tr. 24. Moreover, this is not the only piece of evidence the ALJ relied on to discount Dr. Liligan's opinion. *See id.* ("Her treatment notes show she was able to make long drives to her rheumatology appointments and during an office visit she reported working in the yard moving branches.").

### 2. Dr. Genthe

On March 27, 2013, Dr. Genthe performed a psychological evaluation of Plaintiff. *Id.* at 392-402. In summarizing his clinical findings and conclusions, Dr. Genthe opined that Plaintiff's ability to understand and remember short, simple instructions was poor; her ability to understand and remember detailed instructions was poor; her ability to carry out short, simple instructions in a reasonable amount of time was poor; her ability to carry out detailed instructions in a reasonable amount of time was fair to poor; her ability to sustain an ordinary routine without supervision was poor; her ability to work with or near others without being distracted by them was poor; and her ability to respond appropriately to changes in the work setting was poor. *Id.* at 402. Dr. Genthe further noted that Plaintiff's cognitive limitations would likely hinder her acquisition of many important skills

in a reasonable amount of time and Plaintiff would likely perform best on tasks

that are relatively simple, repetitive and do not demand her cognitive flexibility.

*Id*. As such, Dr. Genthe concluded that Plaintiff's ability to function would likely

be best in environments that do not offer significant distractions. *Id*.

Plaintiff argues that the ALJ erred by failing to directly address Dr. Genthe's

opinions. ECF No. 13 at 15. Defendant concedes that the ALJ did not separately

address Dr. Genthe's opinions in the decision. ECF No. 14 at 10. However,

Defendant asserts that the ALJ's failure to do so was harmless because "the ALJ

adequately accounted for most, if not all of the limitations Dr. Genthe assessed

when she included numerous mental limitations in the RFC." *Id*. at 11. The Court

ultimately agrees with Defendant.

A district court "may not reverse an ALJ's decision on account of an error

that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). An error

is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability

determination." *Id.* at 1115 (quotation and citation omitted). Here, any potential

error resulting from the ALJ's failure to discuss Dr. Genthe's opinions is harmless

in this case because the ALJ adequately incorporated the mental limitations

discussed by Dr. Genthe into the RFC. Dr. Genthe opined that Plaintiff's ability to

understand and remember short, simple instructions or detailed instructions was

poor, Plaintiff's ability to carry out short, simple instructions in a reasonable

amount of time was also poor, and Plaintiff's ability to carry out detailed

instructions in a reasonable amount of time was fair to poor.  Tr. 402.  The ALJ

accounted for these limitations in the RFC by stating that Plaintiff "can understand,

remember and carry out unskilled, routine and repetitive work that can be learned

by demonstration and in which tasks to be performed are predetermined by the

employer."  *Id*. at 20.  Dr. Genthe also opined that Plaintiff's ability to sustain an

ordinary routine without supervision was poor, her ability to work with or near

others without being distracted by them was poor, and her ability to respond

appropriately to changes in the work setting was also poor.  *Id*. at 402.  The RFC

accounted for these limitations by restricting Plaintiff to only occasional work

setting changes, occasional interaction with supervisors, and working in proximity

to coworkers but not in a team or cooperative effort.  *Id*. at 20.  Finally, the RFC

also accounted for Dr. Genthe's opinion that Plaintiff had a fair ability to interact

appropriately with the public, get along with coworkers and respond appropriately

to criticism from supervisors by restricting Plaintiff to performing "work that does

not require interaction with the general public as an essential element of the job but

occasional incidental contact with the general public is not precluded."  *Id*.  The

connection between Dr. Genthe's findings and the RFC are readily apparent.

Considering the record as a whole, and the ALJ's explanation of her

decision, Plaintiff has not demonstrated that the decision would have been any

different had the ALJ directly addressed Dr. Genthe's opinions, beyond

incorporating the limitations in the RFC. The ALJ's decision makes it plain that

the ALJ would have reached the same conclusion—that Plaintiff was fit for

sedentary work with certain additional limitations—had the ALJ expressly

discussed Dr. Genthe's opinions in her decision. Because Plaintiff cannot

demonstrate that the alleged error prejudiced her, any error in the ALJ's weighing

of Dr. Genthe's opinion is harmless. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054

(9th Cir. 2012) ("The burden is on the party claiming error to demonstrate not only

the error, but also that if affected his 'substantial rights,' which is to say, not

merely his procedural rights.") (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09

(2009)).

**B. Adverse Credibility Determination**

Next, Plaintiff asserts that the ALJ erred by failing to provide clear and

convincing reasons for rejecting Plaintiff's subjective complaints. ECF Nos. 13 at

15-18; 15 at 6-8. Specifically, Plaintiff faults the ALJ for: (1) finding that

Plaintiff's activities were inconsistent with disability, and (2) concluding that the

objective evidence in the record does not fully support Plaintiff's complaints of

disabling limitations. ECF No. 13 at 17-18.

In social security proceedings, a claimant must prove the existence of

physical or mental impairment with "medical evidence consisting of signs,

symptoms, and laboratory findings." 20 C.F.R. § 404.1508. A claimant's

statements about his or her symptoms alone will not suffice. 20 C.F.R. §§

404.1508; 404.1527. Once an impairment has been proven to exist, the claimant

need not offer further medical evidence to substantiate the alleged severity of his or

her symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). As long as

the impairment "could reasonably be expected to produce [the] symptoms," 20

C.F.R. § 404.1529(b), the claimant may offer a subjective evaluation as to the

severity of the impairment. *Id.* This rule recognizes that the severity of a

claimant's symptoms "cannot be objectively verified or measured." *Id.* at 347

(quotation and citation omitted).

However, in the event an ALJ finds the claimant's subjective assessment

unreliable, "the ALJ must make a credibility determination with findings

sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily

discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir.

2002). In making such determination, the ALJ may consider, *inter alia*: (1) the

claimant's reputation for truthfulness; (2) inconsistencies in the claimant's

testimony or between his testimony and his conduct; (3) the claimant's daily living

activities; (4) the claimant's work record; and (5) testimony from physicians or

third parties concerning the nature, severity, and effect of the claimant's condition.

*See id.* If there is no evidence of malingering, the ALJ's reasons for discrediting

the claimant's testimony must be "specific, clear and convincing." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quotation and citation omitted). The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

Here, the ALJ found that the medical evidence confirmed the existence of medical impairments which could reasonably be expected to cause some of Plaintiff's alleged symptoms. Tr. 20-21. However, the ALJ did not credit Plaintiff's testimony about the intensity, persistence, and limiting effects of the symptoms. *Id*. Rather, the ALJ concluded that Plaintiff's statements were "not entirely consistent with the medical evidence and other evidence in the record." *Id*. There is no evidence of malingering in this case, and therefore the Court must ultimately determine whether the ALJ provided specific, clear and convincing reasons not to credit Plaintiff's testimony of the limiting effect of her symptoms. *Chaudhry*, 688 F.3d at 672. The Court concludes that the ALJ did provide specific, clear and convincing reasons.

To support her adverse credibility determination, the ALJ consulted Plaintiff's medical records, summarized the relevant records, and cited to portions of the record which were inconsistent with the severity of symptoms and limitations Plaintiff alleged. First, regarding Plaintiff's physical complaints, the

ALJ noted that Plaintiff testified she would be unable to make it to work most days due to joint pain and stiffness. Tr. 24. The ALJ concluded, however, that "[Plaintiff's] allegations of a disabling condition are not fully consistent with her treatment notes." *Id*. For example, while physical examinations were positive for tenderness in her lumbar and thoracic spine, sacroiliac joints and upper extremities, there was little evidence of active inflammation or obvious joint swelling. *Id*. And while Plaintiff experienced some diminished range of motion due to pain in her sacroiliac joints, hips, knees, ankles, toes and right shoulder, there was no evidence of decreased strength and Plaintiff was able to clasp objects and fully close her hand. *Id*. Based on the record, the ALJ concluded that "the objective medical evidence does not reasonably substantive [Plaintiff's] allegations about the intensity, persistence and functionally limiting effects of the symptoms." Tr. 24.

While Plaintiff faults the ALJ for not finding her symptoms sufficiently severe to prevent gainful employment, the Court concludes that Plaintiff has failed to demonstrate that the records relied on by the ALJ do not constitute sufficient evidence of Plaintiff's physical mobility and functional limitations. "While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citation omitted). Such

inconsistencies between Plaintiff's alleged limitations and medical evidence provide a permissible reason for discounting Plaintiff's credibility. *See Thomas*, 278 F.3d at 958-59 (explaining if the ALJ finds that a claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination and, in doing so, "[t]he ALJ may consider . . . testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which the claimant complains.") (internal citations and modifications omitted).

Next, the ALJ addressed the degree of limitation caused by Plaintiff's mental impairments. Tr. 24. The ALJ observed that while Plaintiff's treatment notes showed a history of ADHD, learning disorder, depression and anxiety, "there is no evidence of mental health treatment after August 2014 when Plaintiff was discharged for failure to attend her scheduled appointments without an explanation." *Id*. The ALJ further observed that mental status examinations from Plaintiff's primary care provider noted Plaintiff's mood, affect, attention and concentration as normal. *Id*. Although recognizing that physical pain would be expected to limit Plaintiff's ability to attend and concentrate, the ALJ concluded that the objective medical evidence was nonetheless consistent with the ability to perform unskilled work. *Id*. Based on this evidence, the ALJ concluded that "[Plaintiff] does experience some limitations but not to the extent alleged." *Id*. As

discussed above, the inconsistencies between Plaintiff's alleged limitations and medical evidence provide a permissible reason for discounting Plaintiff's credibility. *Thomas*, 278 F.3d at 958-59.

Finally, the ALJ considered Plaintiff's activities of daily living in assessing Plaintiff's credibility. The ALJ ultimately concluded that Plaintiff's reported activities of daily living and social interaction are inconsistent with her allegations of severely limiting symptoms. Tr. 24. Regarding Plaintiff's alleged physical limitations, the ALJ noted that Plaintiff was able to attend scheduled visits with her primary care provider and rheumatologist without evidence of any rescheduling, and that Plaintiff had testified she cared for her young children by herself when her husband was working and she continues to help since he stopped working, she plays outside with the children, she prepares meals, and Plaintiff's "treatment notes show she was able to make long drives to her rheumatology appointments and during an office visit she reported working in the yard moving branches." *Id*. As for her mental impairments, the ALJ observed that Plaintiff was able to follow recipes in a cookbook and recall recipes from memory, Plaintiff was planning to start GED classes, she was able to read and help her children with simple homework, she uses a computer to access Facebook, she watches television and plays games with her children, all of which is consistent with the ability to perform unskilled work. The ALJ also noted that Plaintiff's ability to attend appointments,

socialize with a friend next door and shop in stores also supports her ability to perform work with occasional contact with supervisors and occasional, incidental contact with the public. *Id.*

Evidence about daily activities is properly considered in making a credibility determination. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). In evaluating credibility, an ALJ may properly consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Molina*, 674 F.3d at 1113 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007)). "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Id.* The ALJ did not err in concluded that certain activities Plaintiff engages in, such as cooking, doing yardwork, attending appointments and taking care of her children, demonstrate greater exertional abilities than the severe limitations claimed by Plaintiff.

In sum, the ALJ recognized Plaintiff's impairments in assigning a sedentary work RFC, but did not credit Plaintiff's subjective claims to the full extent that Plaintiff claimed she was severely limited in her functionality. Tr. 24. The ALJ's decision provides specific, clear and convincing reasons supported by substantial evidence sufficient for this Court to conclude that the adverse credibility determination was not arbitrary.

**C. The "Paragraph C" Criteria Under Listings 12.00**

Plaintiff asserts that the ALJ failed to evaluate the evidence and properly analyze her physical impairments under Listing 14.09 (inflammatory arthritis) at step three of the sequential evaluation process. ECF No. 13 at 18-19. Specifically, Plaintiff argues that the ALJ committed reversible error by failing to obtain additional medical expert testimony to determine whether Plaintiff equaled Listing 14.09 when "[Plaintiff] had a history of left hip and foot pain and fatigue and malaise, along with myalgia throughout her body" and "had marked limitations in concentration, persistence and pace due to the amount of bad days and flares she has." *Id*. at 19.

At step three of the sequential evaluation process, the ALJ considers whether one or more of the claimant's impairments meets or equals any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *Tackett*, 180 F.3d at 1098. "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in [the Listings], then the claimant is presumed disabled" without further inquiry. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Id*. "A boilerplate finding is insufficient to support a conclusion that a claimant's

impairment does not do so." *Id*. (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)).

In her decision, the ALJ "gave particular attention to Listing 14.09" when evaluating Plaintiff's ankylosing spondylitis. Tr. 17. Listing 14.09 contains four separate paragraphs—(A) through (D)—any one of which a claimant must satisfy to establish the requisite level of severity to meet the Listing. *See* 20 C.F.R. pt. 404, subpt. P, app. 1 § 14.09. The ALJ determined that the available medical evidence did not demonstrate the required level of severity under any of the four paragraphs in Listing 14.09. *Id*. at 17-18. To support this finding, the ALJ observed that "[Plaintiff's] treatment notes fail to show she was unable to ambulate or perform fine and gross movements effectively" and "there was no evidence of deformity in one or more major peripheral joints, ankylosis of the dorsolumbar or cervical spine or repeated manifestations of inflammatory arthritis." *Id*. at 18.

Plaintiff does not contest the ALJ's analysis of Listing 14.09, but instead argues that the ALJ was required to request supplemental medical expert testimony to determine whether Plaintiff satisfied the Listing. ECF No. 13 at 19. However, Plaintiff provides no legal authority to support this position. Defendant asserts that additional medical expert testimony was unnecessary because the ALJ had sufficient evidence to evaluate Plaintiff's physical conditions. In her Reply Memorandum, Plaintiff did not respond to Defendant's arguments.

The Court finds that Plaintiff has not demonstrated that the ALJ erred in her step-three analysis. As Defendant notes, a court will not find that the ALJ's step three analysis was erroneous where the claimant proffers no plausible theory as to how her impairments satisfied the specific criteria for any given Listing. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001). Not only has Plaintiff failed to demonstrate how her impairments meet the requirements for Listing 14.09, but she has also failed to establish why additional medical expert testimony was necessary given the extensive medical record before the ALJ.

**D. Step-Five Burden**

Finally, Plaintiff contends that the ALJ erred by providing an incomplete hypothetical to the vocational expert at Plaintiff's hearing. ECF No. 13 at 19-20. The ALJ provided the following hypothetical to the vocational expert:

> [O]ur hypothetical person has no past relevant work. Let's further assume this hypothetical person is limited to sedentary work except this person can never climb ladders, ropes or scaffolds, work at unprotected heights or in proximity to hazards. This individual can occasionally climb ramps and stairs, stoop, kneel, crouch and crawl. This individual can occasionally reach overhead with the right upper extremity. This individual can perform work in which concentrated exposure to vibration is not present. In order to meet ordinary and reasonable employer recommendations regarding attendance, production and workplace behavior, this individual can understand, remember and carry out unskilled, routine and repetitive work that can be learned by demonstration and in which tasks to be performed are predetermined by the employer. This individual can cope with occasional work setting change and occasional interaction with supervisors. This individual can work in proximity to coworkers but

1  not in a team or cooperative effort.  The individual can perform work
   that does not require interaction with the general public as an essential
2  element of the job but occasional incidental contact is not precluded.

3  Tr. 81-82.  The expert relied on this hypothetical to determine that Plaintiff was

4  capable of working as a production assembler, inspector and hand packager, or a

5  nut and bolt assembler.  *Id.* at 82.

6      Plaintiff contends that the ALJ erroneously excluded "the impairments set

7  forth by Dr. Liligan and Dr. Genthe," as discussed in Part A of this Order.  ECF

8  No. 13 at 20.  In Plaintiff's view, when this evidence is properly considered at

9  step-five, "the evidence establishes that [Plaintiff] is disabled."  *Id*.

10     An ALJ need not include limitations in the hypothetical that the ALJ has

11 concluded are not supported by substantial evidence in the record.  *See Osenbrock*

12 *v. Apfel*, 240 F.3d 1157, 1163-64 (9th Cir. 2001).  As discussed, the ALJ did not

13 err in excluding Dr. Liligan's alleged limitations in formulating Plaintiff's RFC.

14 As such, the ALJ did not err in excluding them from the hypothetical.  The ALJ

15 considered the medical evidence and Plaintiff's testimony regarding the asserted

16 limitations.  The ALJ ultimately concluded that the evidence only established that

17 Plaintiff had some, but not all, of the alleged limitations.  Tr. 25.  These were the

18 limitations the ALJ found supported by substantial evidence in the record.  The

19 ALJ concluded further limitations were not supported by the record and, as

20 articulated above, this conclusion was not erroneous.  Moreover, as noted, the ALJ

did in fact incorporate Dr. Genthe's opinions into the RFC. Accordingly, the hypothetical the ALJ used was "accurate, detailed, and supported by the medical record," and the ALJ was then permitted to rely on the vocational expert's testimony. *See Tackett*, 180 F.3d at 1101.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment (ECF No. 13) is **DENIED**.

2. Defendant's Motion for Summary Judgment (ECF No. 14) is **GRANTED**.

The District Court Executive is hereby directed to file this Order, enter Judgment for Defendant, provide copies to counsel, and **CLOSE** this file

**DATED** May 16, 2019.



THOMAS O. RICE
Chief United States District Judge